894 F.2d 1053
 28 Soc.Sec.Rep.Ser. 411, Unempl.Ins.Rep. CCH 15211A
Ken S. KEYES, Jr., Plaintiff-Appellant,
v.
Louis J. SULLIVAN, Secretary of the Department of Health and
Human Services,[1] Defendant-Appellee.
 No. 88-3519.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 25, 1989.
Decided Jan. 22, 1990.
 
 Samuel A. Hall, Jr., Hall and Hall, P.C., Eugene, Or., for plaintiff-appellant.
 Shelly R. Brown, Asst. Regional Counsel for Health and Human Services, Region X, Seattle, Wash., for defendant-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before GOODWIN, Chief Judge, POOLE and BRUNETTI, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Ken S. Keyes, Jr. (Keyes) appeals the district court's order affirming the final decision of the Secretary of Health and Human Services (Secretary) which determined Keyes to be ineligible for continued disability benefits under the Social Security Act, 42 U.S.C. Sec. 405(g), because Keyes is engaged in substantial gainful work activity. This finding is supported by substantial evidence, therefore, we affirm.
 
 PROCEDURAL BACKGROUND
 
 2
 Keyes applied for Social Security disability payments in 1974, alleging disability back to 1971. The Social Security Administration granted Keyes disability pay. In 1984 the Social Security Administration cut off Keyes' disability payments on the grounds that he had been engaged in substantial gainful activity since December, 1974. Keyes appealed this finding and a hearing before an Administrative Law Judge (ALJ) was held on April 10 and 11, 1986. The ALJ denied benefits. The ALJ ruled that Keyes was engaged in substantial gainful work activities. This decision was based on the earnings generated by Keyes for the Living Love Church (Church) and the fact that Keyes' proselytizing, religious training, self-actualization training, lectures, seminars and book writing are the types of activities normally done for profit. The ALJ also noted that Keyes works in a manner which is typical of a self-employed person. The Appeals Council denied Keyes' request for review and this became the final decision of the Secretary.
 
 
 3
 On January 5, 1987, Keyes filed a complaint in district court. The district court affirmed the Secretary's decision denying Keyes benefits finding the denial of benefits was supported by substantial evidence. Keyes timely appeals.
 
 FACTUAL BACKGROUND
 
 4
 In 1946 Keyes contracted poliomyelitis. As a result he suffered complete and permanent paralysis of both legs and the left hand, and partial paralysis of the trunk and the right arm and hand. Since that time Keyes has required around-the-clock attendant care to accommodate his basic needs such as dressing, toileting, and eating.
 
 
 5
 Beginning in 1949 Keyes was employed in his father's real estate business. After his father retired and sold his business, in 1966, Keyes found continued employment in real estate considerably more difficult. In late 1971, feeling mentally and physically fatigued, Keyes decided to abandon the profession altogether. In 1972, Keyes founded and incorporated the Living Love Church providing the initial capital of $290,000. Keyes also loaned the Church $217,000 in 1982 which was paid back in 1983.
 
 
 6
 Keyes has been involved in numerous pursuits since 1974. Between 1975 and 1982 he authored five books and coauthored two others. Keyes works over five hours a day on Church business. He gives frequent lectures and seminars on self-help and sponsors Church retreats. The revenue from the book sales and Keyes' other activities goes to the Church. As a result of Keyes' activities the Church had accumulated assets of $1,200,000 by 1985.
 
 
 7
 The Church pays Keyes no salary, but provides him with room, board, office space, and full-time, daytime attendant care. The Church also finances Keyes' living, travel and vacation expenses. These latter expenses are not subject to the Church's budgetary constraints. Keyes controls the Church's bank account and VISA credit card account. He spends what he wants and the Church authorizes the expenditures at the end of the year. In addition, the Church has occasionally paid his medical and Christmas gift expenses.
 
 DISCUSSION
 
 8
 * Standard of Review
 
 
 9
 We review the administrative record as a whole, weighing all the evidence. Winans v. Bowen, 853 F.2d 643, 644 (9th Cir.1987), and will affirm the Secretary's decision if it is supported by substantial evidence and reflects the correct legal standards. Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).
 
 II
 Merits
 
 10
 The concept of substantial gainful activity involves the amount of compensation and the substantiality and gainfulness of the activity itself. 20 C.F.R. Sec. 404.1532(b); Chicager v. Califano, 574 F.2d 161, 163 (3d Cir.1978). The mere existence of earnings over the statutory minimum is not dispositive. Chicager, 574 F.2d at 163. However, there is a presumption of substantial gainful employment if the applicant earns over the amount specified in the guidelines. 20 C.F.R. Secs. 404.1574(b)(2), 404.1575(b)(2); Josefowicz v. Heckler, 811 F.2d 1352, 1356 (10th Cir.1987). The claimant may rebut a presumption based on earnings with evidence of his inability to be self-employed or to perform the job well, without special assistance, or for only brief periods of time. Anderson v. Heckler, 726 F.2d 455, 456 (8th Cir.1984). It is not disputed that Keyes receives compensation in terms of room, board and other expenses in excess of the statutory maximum of $300.
 
 
 11
 Keyes contends that substantial evidence does not support the Secretary's determination that he is engaged in substantial gainful activity. He challenges the Secretary's failure to deduct medical expenses in calculating his earnings, and also claims that his compensation from the Church should be treated as an annuity.
 
 
 12
 Keyes contends that he neither receives a salary nor intends to profit from his activities, and therefore is not engaged in gainful activity. These contentions, even if true, lack legal significance. "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. Sec. 404.1572(b). Keyes established the Church and produces most of the revenue. Keyes' book writing, lectures and seminars are significant mental activities, see 20 C.F.R. Sec. 404.1572(a), and are normally done for profit. 20 C.F.R. Sec. 404.1572(b). Keyes controls the Church's bank account and checking account which is akin to a self-employed person running his own corporation. That he does not intend to realize a profit is immaterial because he performs activities that are normally done for profit. Thus, the activities are gainful. Id.
 
 
 13
 Keyes also contends that the time he spends is too short to constitute substantial activity. Part-time work may be considered substantial, 20 C.F.R. Sec. 404.1572(a). Id. "A person who is able to engage in substantial gainful work is not disabled although he may be physically impaired." 20 C.F.R. Sec. 404.1571; Burkhalter v. Schweiker, 711 F.2d 841, 843 (8th Cir.1983). Keyes' citation to Patane v. Harris, 507 F.Supp. 115 (E.D.Pa.1981), is not helpful. The court in Patane found that attending a board meeting once a month for less than an hour did not constitute substantial activity. But the ALJ found, based on Keyes' testimony, that Keyes worked five and a half hours per day five and a half day per week. This is enough disparity to distinguish Patane. A five-hour work day can constitute substantial activity. Burkhalter, 711 F.2d at 841.[2]
 
 
 14
 Moreover, time is only one factor considered in determining substantial gainful activity. See 20 C.F.R. Secs. 404.1473(b)-(e), 404.1574. Other considerations include (1) how well the person is able to perform the work, (2) special conditions under which the work is performed, and (3) self-employment. 20 C.F.R. Sec. 404.1573(b)-(e); Mullis v. Bowen, 861 F.2d 991, 993 (6th Cir.1988). Keyes generates most of the Church's revenue through his books and seminars, indicating that Keyes' work is profitable. His involvement in the supervision of Church employees and the scope of his administrative duties reflect major responsibility within the Church. His work appears to be subject to no special conditions. The ALJ found that Keyes' activities were analogous to self-employment. The ALJ's conclusion is supported by substantial evidence and involved application of the correct legal standards.
 
 
 15
 Keyes' contention that the cost of medical care should have been deducted in making the determination of his earnings lacks merit. In making the earnings determination the Secretary must deduct the reasonable costs of services an impaired person expends to continue to work. 20 C.F.R. Sec. 404.1576(a). The Secretary will not allow a deduction if the impaired person is not paying for the services. 20 C.F.R. Sec. 404.1576(b)(3). These costs are not deductible because the Church pays these expenses. Id. Even if they were to be deducted, the Keyes' earnings would still exceed the statutory maximum of $300 per month. 20 C.F.R. Sec. 404.1574(b)(2)(vi). The ALJ found the total amount of Keyes' compensation, in the form of room, board and other expenses, was less the amount the Church expended on his medical care by more than $300 per month.
 
 
 16
 Finally, Keyes claims that the funds and care he receives constitute a return on investment and should be treated as an annuity, not income. Keyes gave the Church its initial $290,000, but there is no indication in Church records or in the hearing record that these funds were to be repaid.
 
 CONCLUSION
 
 17
 The Secretary's determination that Keyes is engaged in substantial gainful activity is supported by substantial evidence.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Louis J. Sullivan is substituted for his predecessor, Otis R. Bowen, M.D., as Secretary of the Department of Health and Human Services. Fed.R.App.P. 43(c)(1)
 
 
 [2]
 In Burkhalter an impaired woman who was able to work competently as a house cleaner on a regular basis and without special help was engaged in substantial gainful activity even though she could only work five hours per day